**Case No. 5,185.**

The GALATEA.

[6 Ben. 259.] [1]

District Court, S. D. New York. Nov., 1872.[2]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Reversed by circuit court (case unreported). Decree of the circuit court reversed by supreme court in 92 U. S. 439.]

T. C. T. Buckley, for libellants.
C. H. Tweed, for claimants.

BLATCHFORD, District Judge. The first and second exceptions on the part of the claimants relate to the barge Reading and her cargo of coal. The first exception is to the allowance of $2.000 as the value of the Reading at the time of the collision, and is made on the ground that "no proper or suitable efforts to save the said barge, after the collision. were made by the libellants, and there was no evidence showing that she might not have been raised and repaired for a sum less than her value when repaired." and on the ground that "the final loss of the said barge was occasioned by the negligence, fault and improper conduct of the libellants in reference to the same, subsequent to the collision." The second exception is to the allowance of the value of the cargo of the Reading at the time of the collision, on the ground that her cargo "might have been raised and saved for an amount less than its value when saved, and no proper or suitable efforts to raise or save the same were made in behalf of the libellants. and the same was finally lost by reason of the negligence, fault and improper conduct of the libellants, in reference thereto, after the collision."

·The allegations of fact contained in these exceptions are not sustained by the evidence. ·The principle decided in the case of The

Baltimore, 8 Wall. [75 U. S.] 377, is not applicable to this case, on the facts proved. In the case of The Baltimore, there was no proof of the fact of a total loss, further than that the vessel sank. The court said, in that case: "Evidence that the injured vessel is sunk is not of itself sufficient to show that the loss was total, nor is it sufficient to justify the master and owner in abandoning the vessel or the cargo, unless it appears that the circumstances were such that the vessel could not be raised and saved, or that the cost of raising and repairing her would exceed or equal her value after the repairs were made." It also said that the full value of vessel and cargo cannot be given as damages, on the ground of a total loss, "where, by reasonable exertions, the vessel may be raised and the cargo saved by the use of such nautical skill as the owners of vessels usually employ in such emergencies;" that the party injured must employ "reasonable measures" to stop the progress of the damage. and must not "wilfully and obstinately, or through gross negligence," suffer the damage to augment; and that the party in fault for the collision is not liable "for such damages as might have been reasonably avoided by the exercise of ordinary skill and diligence, after the collision, on the part of those in charge of the injured ship."

In the present case, there is much more proof of a total loss than merely that the vessel and cargo sank. The vessel and cargo were not abandoned. Reasonable exertions were made to raise the vessel and save the cargo, by the use of such nautical skill as the owners of vessels usually employ in such emergencies. The exertions were reasonable as to promptness, in view of the fact that the sinking took place in the middle of the month of December. They were reasonable as to character and extent, considering the fact that the sinking was in the swift tideway of Hell Gate. The usual appliances were employed, and the matter was put in charge of persons of competent skill. The result goes to prove the fact of total loss, and not the want of reasonable exertion.

The claimants do not appear to have had credit for the few tons of ccal which were taken out of the wreck, six to ten tons. It fairly comes within the second exception, as lost by the improper conduct of the libellants. Their agent, after saving it, appropriated it to his own use.

The third exception of the claimants is to the allowance of $475.10, as and for the freight on the cargoes of the Reading and Pottsville, on the ground that "no deduction has been made from the gross freight on such voyage, for the expenses which would have been incurred by the owners of said barges, in having them towed by the Vim. upon the voyage on which they were engaged at the time of the collision." It does not appear, from the report of the commissioner. how he arrived at the sum of $475.10, or that he

did not make the deduction referred to in the exception. This should appear by his report, before the exception above set forth will lie. The report should have been excepted to, as not stating the principle on which it allowed the $475.10, and how that amount was made up, or a motion should have been made to send back the report for correction, in those particulars. A report either for a gross sum, or for gross items, should be accompanied by an explanation of the principles on which the sums are given, if it is intended to question those principles by exception. The court is not called upon to conjecture the principles, by examining the evidence to see what the principles may probably have been. They must be stated in the report. The report must state explicitly whether the deduction referred to was made, or must state facts, as found by the commissioner, from which no other conclusion can be drawn than that he made no such deduction. The proper practice is laid down in the case of Murray v. The Charming Betsey, 2 Cranch [6 U. S.] 64, 124.

The same view disposes of the fourth exception of the claimants, which is to the allowance of $80, as and for the towage to be earned by the tug-boat Vim, from the owners of the barge Hoffman, on the ground that "no deduction has been made therefrom, for the expenses which would have been incurred by the owners of said tug-boat in earning such towage." It does not appear from the report how the commissioner arrived at the sum of $80, or that he did not make the deduction named in the exception.

All the exceptions on the part of the claimants, must, therefore, be overruled, save the second one, in the particular above stated, as to which a proper deduction must be made, but the report furnishes no means of stating what the deduction should be.

The first and second exceptions of the libellants Robert and Gladwish are to the effect that the report, in allowing $2,000 as the value of the Reading, and $2,000 as the value of the Pottsville, at the time of the collision, ought to have allowed more as the value of the two boats, and ought to have allowed at least $6,000 as their value. The first and second exceptions of the libellant McWilliams are to the effect, that the report, in allowing $3,000 as the value of the C. J. Hoffman, at the time of the collision, ought to have allowed more, and ought to have allowed at least $4,300. An examination of the evidence satisfies me, that the allowance in respect to each of the three boats is sufficient.

The third exception of the libellants Robert and Gladwish is, that the report should have allowed $594.97, as the net freight on the Pottsville and Reading, instead of $475.10; and the third exception of the libellant McWilliams is, that the report should have allowed $179.68, as the net freight on the C. J. Hoffman, instead of $125.68. As the report does not state whether the items allowed are net freight or gross freight, and, if net freight, how the sums were arrived at, and on what principles, and what deductions were made from gross freight, these exceptions present no point for consideration, and are overruled.